UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA RYAN AUTRY,

No. 13-15009

        Plaintiff,

District Judge Paul B. Borman

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Melissa Ryan Autry ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion be GRANTED and that Plaintiff's Motion be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on February 9, 2012, alleging disability as of April 1, 2011 (Tr. 147, 154). On October 23, 2012, Administrative Law Judge ("ALJ") Mary Ann

Poulose conducted an administrative hearing (Tr. 41).  Plaintiff, represented by attorney John Morosi, testified, (Tr. 45-67), as did vocational expert ("VE") Glee Ann Kehr (Tr. 67-69).  On November 28, 2012, ALJ Poulose found Plaintiff not disabled (Tr. 33).

On April 19, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-7).  Plaintiff filed her complaint in this Court on December 10, 2013.

## II.  BACKGROUND FACTS

Plaintiff, born February 7, 1979, was 33 at the time of the administrative decision (Tr. 33, 147).  She left school before the end of 10th grade and worked previously as a fast food worker, babysitter, and telemarketer (Tr. 45, 172, 177).  Her application for benefits alleges disability due to depression, anxiety, and an "impulse control disorder" (Tr. 171).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in an apartment with her children, ages nine and six (Tr. 45).  She had not received a GED (Tr. 45), and had dropped out of high school due to lack of interest (Tr. 46).  She had not worked in four years (Tr. 46).  Her last job was babysitting for her sister's children (Tr. 46).  None of her other jobs lasted more than three months (Tr. 47).  She stopped working because one of her own children, a "special needs child," required extra attention (Tr. 46).  She held a valid driver's license, but only recently resumed driving following an April, 2012 seizure (Tr. 48).

Plaintiff experienced difficulty performing some self-care activities and relied on a

home care aide to shave her legs, perform household chores, and grocery shop (Tr. 48). She experienced difficulty lifting her son but helped him with his homework (Tr. 48-49). She was unable to walk meaningful distances due to right hip and foot pain (Tr. 49). She had experienced the body pains since the April, 2012 seizure (Tr. 50). She had been diagnosed with fibromyalgia (Tr. 49-50).

On a typical day, the home aide arrived in the morning to help prepare Plaintiff's son for school (Tr. 50). She and the aide would then perform household chores that could include trips to the laundromat (Tr. 50). Plaintiff would then pick her children up at school after which time the aide would prepare dinner (Tr. 50). Plaintiff would then help her children with their homework and the aide would help her bathe her son (Tr. 50-51). She ended the day watching television (Tr. 51). Both of her children had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and were counseled by a psychiatrist (Tr. 51). Plaintiff swam with her children on occasion, noting that swimming did not exacerbate her physical problems (Tr. 51). She was able to carry a gallon of milk, but experienced problems lifting objects from a bending position (Tr. 52). She was unable to stand for more than 10 minutes or sit for meaningful periods due to back pain (Tr. 53-54).

Plaintiff took Xanax for anxiety, Trileptal for mood stabilization, and an anti-seizure medication (Tr. 54-55). She experienced panic attacks characterized by breathing problems (Tr. 55). The panic attacks were precipitated by crowds and loud noises (Tr. 55). She coped with the panic attacks by taking Xanax (Tr. 56). She was currently treated by a psychiatrist

-3-

and received psychological counseling (Tr. 57). Epidural injections had been recommended

for her back problems (Tr. 57). She had been told to refrain from physical therapy until

diagnostic testing had been completed (Tr. 58). The long-term condition of muscle spasms

had dramatically worsened since experiencing the April, 2012 seizure (Tr. 60). She stood

5' 7" and weighed 253 pounds (Tr. 62). Although she had lost weight at one point in the

past, she had regained it following the seizure (Tr. 62). She experienced depression since

discontinuing antidepressants (Tr. 64). Due to depression, she experienced problems getting

out of bed in the morning (Tr. 63). She spent a portion of her day in bed due to a

combination of physical problems and depression (Tr. 64). She felt overwhelmed with the

combined pressure of her children's problems and her own condition (Tr. 67).

### B.  Medical Records[1]

### 1.  Treating Records

April, 2011 counseling notes by social worker Lisa Wachowski state that Plaintiff

responded well to psychological counseling but appeared anxious, with a restricted affect (Tr.

321). Wachowski assigned Plaintiff a GAF of 42[2] (Tr. 317). Plaintiff reported that she

wanted to work but did not believe it was "realistic," given that she was taking care of her

---

[1]

Records unrelated to the benefits claim have been reviewed in full but are omitted
from the current discussion.

[2]

A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in
social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and
Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*" )(4th ed.2000).

special needs son (Tr. 311).  She indicated that she was able to get her children to school, drive, and go out in public (Tr. 311).   In May, 2011 Plaintiff reported panic attacks, depression, and a possible pregnancy (Tr. 228).  Treating records state that she was fully oriented with normal judgment and affect (Tr. 229).  Kishore Kondapaneni, M.D. performed a psychiatric evaluation, diagnosing "moderate" major depression and an impulse control disorder (Tr. 306).  He assigned her a GAF of 52[3] (Tr. 306-307).  Counseling notes from June, 2011 state that Plaintiff reported good results from recently prescribed medication and a diagnosis of "mild" major depression (Tr. 300-301).  Counseling notes from the following month state that she missed an appointment due to stress related to "job searching" (Tr. 294-295).  Other counseling notes from the same month state that she appeared anxious but "calm" and "cooperative" (Tr. 292).  Later the same month, Plaintiff reported that she began a new job but quit due to "back pain and lifting" (Tr. 290).

In August, 2011, Plaintiff reported improvement since beginning counseling and denied symptoms of anger or anxiety (Tr. 277, 288).  She reported panic attacks and anxiety while her boy friend was out of town (Tr. 271).  October, 2011 records state that she enjoyed good family support (Tr. 267).  Notes from later the same month state that she took an emotional downturn after experiencing a miscarriage (Tr. 262).  December, 2011 notes state that her mood and affect were appropriate (Tr. 254).  The following month, Plaintiff reported

---

[3]A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM–IV–TR* at 34.

being "overwhelmed" after her boyfriend was arrested for burglary (Tr. 250). Plaintiff reported that she was applying for disability insurance (Tr. 245). Counselor Judy Wilcox noted Plaintiff's history of "losing" prescribed psychotropic medication (Tr. 248). The following month, Plaintiff denied medication side effects (Tr. 239-241). Dr. Kondapaneni noted Plaintiff's report that she was losing her house because her boyfriend was going to jail (Tr. 237). He found the presence of multiple "psychosocial" pressures (Tr. 238). He observed that Plaintiff was fully oriented but "depressed, irritable [and] tearful" (Tr. 238). The same month, Wilcox opined that Plaintiff was unable to work due to financial, social, and psychological pressures (Tr. 501).

March, 2012 counseling notes state that Plaintiff was "not interested in employment" at present because she was "overwhelmed" by her boyfriend's impending criminal trial (Tr. 387-388). Plaintiff reported left thigh pain (Tr. 390). PA Jennifer Johnson noted that Plaintiff experienced ongoing depression and anxiety due to financial, housing, and relationship problems (Tr. 360). Plaintiff exhibited a normal range of motion (Tr. 365).

In April, 2012, EEG testing performed following a grand mal seizure was mostly unremarkable (Tr. 349). An MRI of the brain was unremarkable (Tr. 378-379). Counseling notes state that Plaintiff hoped that the seizures would "help her case" for disability benefits (Tr. 394). Counseling records also state that Plaintiff exhibited a normal gait and posture and an unremarkable appearance, but "rambling, rapid, pressured [and/or] loud" speech (Tr. 397-399). She was assigned a GAF of 45 (Tr. 401). May, 2012 imaging studies of the dorsal and

lumbar spine were unremarkable (Tr. 341-342).  A second EEG was also unremarkable  (Tr.

350).  Neurologist Mohammed M. Al-Qasmi, M.D.  restricted Plaintiff from all driving for

several months (Tr. 352-353).

The following month, Plaintiff reported severe low back pain (Tr. 369).  An MRI of

the lumbar spine showed mild degenerative changes at L4-L5 and a small disc herniation at

L5-S1 (Tr. 343).  An MRI of the thoracic spine was unremarkable (Tr. 345).   PA Johnson

completed an assessment indicating that Plaintiff limited to lifting "less than 10 pounds" on

an occasional basis and was unable to stand/walk for more than two hours in an eight-hour

workday (Tr. 409).  Johnson found further that Plaintiff required help bathing and with

household chores (Tr. 410).  Plaintiff reported memory problems since experiencing the

April, 2012 seizure (Tr. 363).   Counseling notes state that Plaintiff intended to get a free

pass to the YMCA for herself and her children (Tr. 404).  Notes from later the same month

state that she attending "parties" and went to the beach with her children (Tr. 406).

In July, 2012, Dr. Al-Qasmi attributed the April, 2012 seizure to Wellbutrin use (Tr.

357).   The following month, Thomas M. Raymond, M.D. noted reports of "diffuse

tenderness" but the ability to heel and toe walk and squat and arise (Tr. 466).  He noted a

possible diagnosis of fibromyalgia syndrome (Tr. 467).   He recommended a stretching

program (Tr. 467).  The same month, Plaintiff reported that physical therapy "did 'not really'

help her" (Tr. 472).  Physical therapy discharge records state that Plaintiff's improvement

was hampered by her reports of "widespread, vague pain" (Tr. 493).

In September, 2012, Plaintiff was approved for a government funded "chore provider" (Tr. 408). The following month, Plaintiff reported "mild" symptoms of depression and "moderate anger issues" (Tr. 456). Dr. Kondapaneni completed a "Mental Impairment Questionnaire" on Plaintiff's behalf, finding that Plaintiff's psychological symptoms would interfere with Plaintiff's work performance approximately twice a month (Tr. 461). He found that Plaintiff experienced moderate limitation in maintaining social functioning and in concentration, persistence, or pace (Tr. 462). He found that she experienced one or two episodes of decompensation each year (Tr. 462).

### 2. A Non-Treating Record

In March, 2012, Mark Garner, Ph.D. conducted a non-examining review of Plaintiff's treating records, finding that she experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace as a result of depression and anxiety (Tr. 75). He concluded that Plaintiff "retain[ed] the ability to do one and two step tasks on a sustained basis" (Tr. 78). He noted that the record (as of March, 2012) did not support the presence of exertional limitations (Tr. 79).

### 3. Evidence Submitted After the ALJ's November 28, 2012 Decision

### a). Evidence in the Transcript

In October, 2012, Thomas M. Raymond, M.D. noted that EMG nerve conduction studies showed mild neuropathy in the lower extremities (Tr. 504, 545, 550). He recommended epidural injections and prescribed biweekly physical therapy (Tr. 503).

-8-

Imaging studies showed no evidence of lumbar radiculopathy (Tr. 551). Dr. Kondapaneni's notes from the same month state that Plaintiff's described her depressive symptoms as "mild" (Tr. 525). She exhibited a normal gait and posture (Tr. 526). October 25, 2012 notes by PA Johnson state that Plaintiff described symptoms consistent with "severe" depression (Tr. 549). Therapy records dated October 29, 2012 state that Plaintiff had "stable" symptoms and "no complaints" (Tr. 533). She appeared "attentive" and "cooperative" with a normal gait and posture (Tr. 534). The following month, Plaintiff reported constant back and leg pain (Tr. 507). November 27, 2012 treating notes state that she appeared "calm and depressed" (Tr. 537). December 3, 2012 records by PA Johnson state that Plaintiff was not in "acute distress" but appeared "uncomfortable" due to back problems (Tr. 555).

### b) Exhibits Attached to Plaintiff's Brief

January 26, 2013 treating notes by Dr. Raymond note Plaintiff's report of increased back pain. *Docket #11-2,* 55 of 65. On February 21, 2013, Plaintiff reported ongoing back pain but denied numbness. *Id.* at 56. The following week, Plaintiff reported radiculopathy and "really bad" back pain. *Id.* at 58. A March, 2013 MRI of the lumbar spine, taken in response to Plaintiff's report of right-sided lower extremity radiculopathy for one month, shows a large disc herniation with nerve root impingement at L5-S1. *Id.* at 11, 61. Plaintiff reported right leg numbness "for over one month" and recent urinary incontinence. *Id.* at 36. On March 21, 2013, Plaintiff underwent a microlumbar discectomy/hemilaminectomy at L5/S1. *Id.* at 3 Surgeon David D. Udehn, M.D. noted that after "a long history of back pain"

-9-

Plaintiff had "developed progressive severe right buttock and right leg radicular pain . . ." *Id.* Plaintiff demonstrated 5/5 strength in all extremities. *Id* at 3, 38. Upon discharge three days later, Plaintiff reported "not much" leg pain. *Id.* at 5. "Rehab" notes from the same week make reference to a diagnosis of "fibromyalgia syndrome." *Id.* at 60.

The following month, Plaintiff sought emergency treatment for radiculopathy of the right lower extremity. *Docket #11-3,* 17 of 34. She exhibited a normal mood and affect. *Id.* An MRI showed "some . . . disc protrusion" at S1 but no nerve root impingement. *Id.* at 25. She was admitted for a second microlumbar discectomy. *Id.* at 29. In June, 2013, Plaintiff reported "'weird sensations'" in the spine but noted that medication kept her pain "'tolerable.'" *Docket #11-5,* 20 of 21.

### C. Vocational Testimony

VE Glee Ann Kehr testified that Plaintiff's former work activity did not qualify for substantial gainful activity (Tr. 67). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [L]imited to only occasional climbing, crouching, crawling, stooping, kneeling; unskilled work that does [not] involve public interaction; only occasional coworker interaction; and it should be routine and simple work that does not involve any hazards, like unprotected heights, moving machinery, commercial driving. Would there be any jobs in the regional or national economy? (Tr. 68).

The VE responded that the above-limited individual would be capable of performing

the exertionally light,[4] unskilled work of a housekeeper (3,200 positions in the State of

Michigan); mailroom clerk (Tr. 3,200); and office helper (3,700) (Tr. 68). She testified that

if the same individual also required a sit/stand "at will" option, the housekeeping position

would be eliminated but the job numbers for the mailroom and office helper positions would

remain unchanged (Tr. 69).

The VE testified that the need to be "off task" for more than 15 percent of the work

shift, or the need to miss more than one day of work each month would preclude all

competitive employment (Tr. 69). She concluded by stating that her testimony was not

inconsistent with the information found in the Dictionary of Occupational Titles ("DOT")

(Tr. 69).

### D.  The ALJ's Decision

Citing the medical transcript, the ALJ found that Plaintiff experienced the severe

impairments of "mild major depressive disorder, anxiety/panic disorder, seizure disorder, and

obesity" but that none of the conditions met or equaled a listed impairment found in 20

C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18, 22). She found that Plaintiff experienced

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires
"lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of
objects weighing 50 pounds or more. § 404.1567(e).

mild impairment in activities of daily living, social functioning, and moderate limitation in

"concentration, persistence, or pace" (Tr. 23).   She noted that Plaintiff arose each morning

to take care of children, experienced good relationships with family members, and attended

parties (Tr. 23). She cited Dr. Kondapaneni's finding of moderate concentrational limitations

(Tr. 23).

The ALJ determined that Plaintiff had the  Residual Functional Capacity ("RFC") for

work at all exertional levels with the following additional restrictions:

> [Plaintiff] is limited to simple, routine, unskilled work activity with occasional
> coworker interaction and no public interaction, that involves only occasional
> climbing, crouching, crawling, stooping and kneeling, and that does not expose
> the claimant to occupational hazards such as unprotected heights, moving
> machinery, or commercial driving (Tr. 24).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform the work of a

housekeeper, mail room clerk, and office helper (Tr. 32).

The ALJ discounted Plaintiff's alleged degree of limitation.  She noted that the

professed physical and mental impairments were undermined by her ability to attend beach

parties and free activities at the YMCA (Tr. 26).  She cited January, 2012 treating notes

stating that Plaintiff's disabling emotional limitations was not reflected in her demeanor or

affect (Tr. 27).  She discounted Judy Wilcox's opinion that Plaintiff was incapable of work,

noting that the letter suggested that Plaintiff's need to fulfill her responsibilities as a single

mother (rather than functional limitations) prevented her from gainful employment (Tr. 28).

-12-

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

-13-

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." 7 *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff argues that she entitled to a remand pursuant to both the fourth and sixth sentence of 42 U.S.C. 405(g).

The fourth sentence of 42 U.S.C. § 405(g) states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In requesting a "sentence four" remand, Plaintiff contends, in effect, that the ALJ's decision was tainted by the erroneous interpretation of the medical evidence.  *Plaintiff's Brief*, 5-13, *Docket #11.*

In contrast,  a "sentence six" remand under the same subsection  "does not attach to

any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." *Melkonyan v. Sullivan,* 501 U.S. 89, 97–99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. *Id.* The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. § 405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). However, the court retains jurisdiction in a sentence six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); see also *Melkonyan,* 501 U.S. at 98.  In requesting a sentence six remand, Plaintiff argues that the evidence submitted after the administrative opinion (found both in the transcript and attached to her brief) merits a remand for review by the ALJ. *Plaintiff's Brief* at 14-17.

### A.  A Step Four Remand

Here, Plaintiff argues that neither the hypothetical question nor the RFC included all of her relevant work-related limitations.  *Plaintiff's Brief* at 5-13. She disputes the ALJ's finding that she was capable of working at all exertional levels, contending that the ALJ erred in discounting the reports of back pain predating the November 28, 2012 administrative decision.  She contends further that the ALJ ought to have adopted Dr. Kondapaneni's

-15-

October, 2012 finding that Plaintiff would be expected to miss work "about twice a month" due to psychological limitations. *Id.* at 13 (citing Tr. 461).

Plaintiff's argument that the ALJ erred by omitting a portion of her professed limitations from the hypothetical question is not well taken. She is correct that vocational testimony elicited in response to an incomplete hypothetical question does not constitute substantial evidence. *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004). However, an ALJ is not obligated to include unsupported allegations of limitation in the hypothetical limitations posed to the VE. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

Contrary to Plaintiff's argument, the ALJ's reasons for omitting a number of the professed limitations from hypothetical question and RFC are well articulated and supported by the transcript (Tr. 19, 26-27). The ALJ correctly noted that a May, 2012 MRI showing only mild degenerative changes and a small (non-encroaching) disc herniation did not support her claims of disabling back and lower extremity problems (Tr. 19). The ALJ cited clinical testing from the same period showing a full range of motion and normal strength in all extremities (Tr. 19). As to the psychological conditions, the ALJ noted that her choice of hypothetical modifiers (no public interaction; occasional coworker interaction; and routine, simple work) was supported by both the treating notes and the state agency psychological consultant (Tr. 30-31, 68).

Plaintiff takes issue with the ALJ's observation that the alleged back problems did not

occur until a year after the onset date (Tr. 19, 24). She contends that the fact that she did not experience back pain until after the April, 2012 seizure should not be used to discredit her disability claim. However, the ALJ did not err in inferring that Plaintiff exaggerated the impact of the seizure. Plaintiff herself told a counselor in April, 2012 that she hoped that the seizure would strengthen her case for disability benefits, which was until then based on exclusively on psychological conditions (Tr. 171, 394).

Further, records created between the alleged onset date of April 1, 2011 and April, 2012 only weakly support (if not undermine) Plaintiff's allegations that she was disabled from all work due to psychological problems. In April, 2011, Plaintiff stated that she did not believe that it was "realistic" to consider holding a job while caring for her children (Tr. 311). Counseling notes from the following month state that she was "job searching" (Tr. 294-295). March, 2012 counseling notes state that she was "not interested" in obtaining employment (Tr. 387-388). Counseling records created between April, 2011 and March, 2012 suggest that Plaintiff's psychological condition was attributable to a miscarriage and the financial and personal disruptions created by her boyfriend's 2011 arrest rather than long-term psychological problems (Tr. 238, 250, 262). The ALJ's conclusion that Plaintiff overstated her limitations for the purpose of obtaining benefits is well supported.

Records created subsequent to the April, 2012 seizure also support the non-disability determination. Counseling notes from June and July, 2012 showing that Plaintiff accompanied her children to the YMCA, attended parties, and went to the beach contradict

her claim that she was virtually housebound by psychological and physical problems (Tr. 404, 406). Plaintiff argues that Dr. Kondapaneni's finding that psychological problems would preclude work approximately two days a month ought to have been adopted (Tr. 461). However, the ALJ permissibly rejected his claim on the basis that his treating notes for the relevant period reflected a diagnosis of "mild," rather than disabling psychological limitation (Tr. 29).

Aside from the lack of objective testing to support the claims of back pain, the allegation that back pain created work-related limitations from April, 2012 forward is also undermined July, 2012 findings that Plaintiff was able to heel and toe walk and squat and arise without difficulty (Tr. 466). Physical therapy records characterize her professed pain as "vague" (Tr. 493). In October, 2012, Dr. Kondapaneni observed that Plaintiff had a normal gait and posture (Tr. 457). Assuming at worst that the RFC for work at all exertional levels overstates Plaintiff's physical abilities (Tr. 24), the jobs actually listed by the VE were limited to positions that would not require more than 20 pounds lifting (Tr. 68). Substantial evidence easily supports the conclusion that Plaintiff could perform the exertionally light jobs of housekeeper, mailroom clerk, and office helper (Tr. 32). Accordingly, Defendant has met her burden at Step Five.

### B. A Sentence Six Remand

Plaintiff also relies on a number of records submitted after the November 28, 2012 administrative determination in support of remand. *Plaintiff's Brief* at 14-17, *Docket #11-2-*

-18-

*11-5,* (Tr. 503-556). She contends that a March, 2013 MRI showing a sizable disc herniation requiring surgery supports her claim of a disabling back condition prior to the November 28, 2012 administrative decision.

Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

The fact that the majority of the records were created after November 28, 2012 constitutes "good cause" for their late submission. *See Street v. Commissioner of Social Security* 390 F.Supp.2d 630, 641 (E.D.Mich.,2005)(subsequently created records allegedly pertaining to the claimant's condition *prior* to the administrative decision satisfies "good cause" requirement); *Cotton, supra,* 2 F.3d at 696.   However, in contrast to *Street*, this Plaintiff cannot show that the newer records are "material" to the ALJ's decision.  To show materiality, Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir.1988).

An examination of the newer records shows that Plaintiff's back condition did not

-19-

materially worsen until  after the administrative decision was issued.  Dr. Kondapaneni's
October, 2012 treating records note a normal gait and posture (Tr. 526).  October 29, 2012
counseling records also note a normal gait and posture (Tr. 534).  December 3, 2012 records
state that while Plaintiff complained of continued back pain, she was not in acute distress
(Tr. 555). On January 26, 2013, Plaintiff reported increased back pain.  *Docket #11-2* at 55.
As of February 21, 2013, Plaintiff reported ongoing back pain but denied any numbness. *Id.*
at 56.  At the next appointment, Plaintiff reported "really bad" back pain.  *Id.* at 58.

The March, 2013 records also support the conclusion that Plaintiff did not experience
the onset of the acute back condition until after November 28, 2012.   Notes accompanying
the March, 2013 MRI state that Plaintiff reported right-sided lower extremity radiculopathy
for "one month." *Id.* at 11, 61.  At the time of the March 21, 2013 discectomy, Plaintiff
reported right leg numbness "over one month." *Id.* at 36.  Even assuming that Plaintiff
experienced significant back pain as of January 26, 2013, her symptoms did not commence
until approximately two months after the administrative decision.  *See Sizemore*, at 711–712
(records related to a claimant's condition *after* the administrative decision not "material" to
the ALJ's findings).

However, the records showing that Plaintiff's condition worsened in the first half of
2013 could provide a basis for a new claim for benefits.  If Plaintiff believes that she can
establish disability after the date of the decision, her remedy would be to apply for benefits
for that period. *Id.*  But because the newer records are inapplicable to Plaintiff's condition

prior to the ALJ's decision, a remand on this basis is not warranted.

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion for summary judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 31, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 31, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager